# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL KNEPPER, | : | 09-cv-2069 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| RITE AID CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

### February 16, 2011

## I.   INTRODUCTION

Former Plaintiff Robert Vasvari ("Plaintiff" or "Vasvari") was employed as an Assistant Manager by Rite Aid Corporation ("Defendants") and, in this action,[1] seeks to recover "back wages for all hours worked . . . as well as for overtime work" under Ohio's Minimum Fair Wage Standards Act ("Ohio MFWSA"). Pursuant to an Order of the Court on December 3, 2010, Daniel Knepper was substituted for Robert Vasvari as Plaintiff because of Mr. Vasvari's death. Because Mr. Knepper replaced Mr. Vasvari but all claims and allegations remained the same, we shall refer to them interchangeably. Plaintiff also seeks to certify a

---

[1] Plaintiff is also an opt-in Plaintiff in another action before this Court, *Craig v. Rite Aid*, 08-cv-2317, that asserts claims pursuant to the Fair Labor Standards Act.

1

class on behalf of all current and former Rite Aid Assistant Mangers in the state of Ohio pursuant to Federal Rule of Civil Procedure 23. Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(c) ("the Motion"). (Doc. 45). The Motion has been fully briefed by the parties, and thus is ripe for disposition. (*See* Doc. 72 (Defendants' Brief in Support); Doc. 74 (Plaintiff's Brief in Opposition); Doc. 76 (Defendants' Reply).) For the reasons articulated in this Memorandum, the Court will grant the Motion and dismiss the action without prejudice.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."[2] A "Rule 12(c) motion is little more than a relic of the common law and code era, and it only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain. Granting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus this court requires the movant to clearly establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."

---

[2]Defendants filed an Answer on October 2, 2009 and, thus, the Motion is properly pursued under Federal Rule of Civil Procedure 12(c).

*Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (citing *Jablonski*, 863 F.2d at 290-91, punctuation omitted). A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

As in a motion to dismiss under Rule 12(b)(6), when considering a motion to dismiss under 12 (c) courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss under 12(c), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A motion under Rule 12(b)(6) or 12(c) tests the sufficiency of the complaint

against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 120 S.Ct. At 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*,

4

550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

### III. BACKGROUND AND PROCEDURAL HISTORY

Vasvari was formerly employed by Rite Aid from November 2, 1998 until June 12, 2009. For approximately the last three years of his employment, Vasvari was classified as an Assistant Manager. Vasvari's employment was terminated on June 12, 2009 because of restructuring within the company.

On July 22, 2009, Vasvari initiated the instant action by filing a Complaint against Defendants in the United States District Court for the Northern District of Ohio in *Vasvari v. Rite Aid, et al.*, No. 4:09-cv-1699, seeking damages and injunctive relief for alleged violations of the Ohio MFWSA.[3] (Doc. 1). Defendants filed an Answer to Vasvari's Complaint on October 2, 2009 (Doc. 11) and filed a Motion to Dismiss or Transfer on that same date (Doc. 12). A

---

[3]Federal subject-matter jurisdiction is invoked under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

stipulation and order transferring the action to this Court was entered on October 19, 2009. (Doc. 14.)

On June 23, 2009, Vasvari consented to become a party-plaintiff in the *Craig v. Rite Aid Corporation*, 08-cv-2317, Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") action before this Court, in which current and former Rite Aid assistant managers allege they were misclassified as exempt and thus improperly denied overtime compensation. Plaintiff advances the same argument under the Ohio MFWSA in the class-action Complaint presently before the Court (Doc. 1), filed on July 22, 2009 in the United States District Court for the Southern District of Ohio. To serve the convenience of the parties and witnesses, the action was transferred to this Court on October 19, 2009 pursuant to 28 U.S.C. § 1404(b). (Doc. 14.)

Defendants filed a motion for summary judgment or, in the alternative, judgment on the pleadings on February 22, 2010 (Doc. 45), and we granted in part and denied in part that motion on July 9, 2010 (Doc. 54). Specifically, we found that, contrary to Defendants' assertions, Vasvari did not release his Ohio MFWSA claims in the release and waiver that he signed when he left his employment with Rite Aid, and thus denied Defendants' motion on those grounds. Further, we denied Defendants' motion to the extent that Defendants asserted that Vasvari may

not maintain an Ohion MFWSA action because of its incompatibility with the FLSA § 216(b) action, but noted that Defendants could renew the Motion if the Third Circuit decided a pending case, *Parker v. NutriSystem, Inc.*, in a manner that warranted reconsideration. Finally, we granted Defendants' motion to the extent that it requested dismissal of Vasvari's Ohio MFWSA "recordkeeping" claims. (*See* Doc. 54 p. 19-20.)

While the *Parker* decision subsequently issued on September 7, 2010, the case was decided by the Third Circuit on grounds unrelated to the inherent incompatibility doctrine at issue *sub judice*. Because the Third Circuit's decision in *Parker* did not preclude Defendants' relevant arguments, we granted Defendants' request to re-file their Motion for Judgment on the Pleadings. (Doc. 65.) As noted above, Defendants filed the present Motion on October 12, 2010. (Doc. 69.)

## IV.  DISCUSSION[4]

Defendants argue that Plaintiffs' action must be dismissed on several grounds because of its relation to the pending FLSA action in *Craig v. Rite Aid*, 8-cv-2317. First, Defendants argue that the OMFWSA claims mirror the claims in

---

[4]We note that our analysis will mirror that found in our Memorandum Opinion issued on today's date in *Fisher v. Rite Aid*, 10-1865, because each action shares the same determinative issue.

7

*Craig*. Because of this parallel, Defendants argue that the OMFWSA claims must be dismissed because the applicable Rule 23 class-action scheme is inherently incompatible with the opt-in class-action scheme mandated by § 216(b). Further, Defendants argue that the state-law claims are preempted by the rights and standards articulated in the FLSA. Second, Defendants argue that the Ohio MFWSA class claims must be dismissed because application of a Rule 23 class action would abridge substantive FLSA rights, and thus violate the Rules Enabling Act.

Because we find that this action should be decided on inherent incompatibility grounds, we will only briefly discuss Defendants' other arguments but assure the parties that each argument has been fully considered by the Court.

### A. FLSA and Ohio MFWSA

In 1938, Congress made a finding that there were "labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers. . ." and thus enacted the FLSA "correct and as rapidly as practicable eliminate the [above-named conditions] without substantially curtailing employment or earning power." 29 U.S.C. § 202. As we noted in our July 6, 2010 Memorandum and Order, Section 216(b) of the FLSA limits the scope of class actions for overtime pay by requiring

that potential plaintiffs opt-in to the action. (*See* Doc. 53.) In *Hoffman-La Roche*, the Supreme Court recited Congress's reasoning for amending the FLSA procedures via the Portal-to-Portal Act of 1947:

> In part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, the representative action by plaintiffs not themselves possessing claims was abolished, and the requirement that an employee file a written consent was added. *See* 93 Cong. Rec. 538, 2182 (1947) (remarks of Sen. Donnell). The relevant amendment was for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions.

*Hoffman-La Roche v. Sperling*, 293 U.S. 165, 173 (1989). This reasoning demonstrates that the "FLSA's opt-in requirement codifies Congress's desire to: (1) control the volume of minimum wage and overtime litigation by eliminating representative (i.e., opt-out) actions; and (2) increase each individual's knowledge and involvement in the action by ensuring the no one's rights are litigated without their knowledge." (Doc. 72 p. 29; *see also* Doc. 53 pp. 16-17 (quoting Defendants' Brief, Doc. 46).)

In addition to the federal scheme, states have enacted their own labor-standards acts, including various wage and hour laws. Plaintiff thus asserts this action under the Ohio MFWSA and invokes federal court jurisdiction under

CAFA.[5] The applicable section of the Ohio MFWSA provides, in pertinent part:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1938.

O.R.C. § 4111.03. Section 207(a)(1) of the FLSA comparably provides:

> [N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Thus, the Ohio statute essentially mirrors the relevant FLSA provision and is effectuated solely through reference to the procedures and exemptions listed in the FLSA.

### B. Preemption

We initially find that the Ohio MFWSA claims asserted in this action are not preempted by the FLSA. Enactment of the FLSA was not an attempt by Congress to exclusively regulate the field of wages. Indeed, the FLSA contains a "savings clause" that makes clear that the standards articulated in the FLSA are merely the

---

[5] The Class Action Fairness Act of 2005, enacted as a tort-reform measure, expanded a federal court's jurisdiction over large-scale class action law suits. *See* 28 U.S.C. §§ 1332(d); 1711-1715. Under CAFA, a district court that has diversity jurisdiction over at least one plaintiff and the defendants likewise has jurisdiction to hear an action in which the total amount in controversy exceeds 5 million dollars.

"floor" of regulations and that states are free to enact relevant laws that are more protective than the scope of the FLSA. *See* 29 U.S.C. 218(a).

### C. Inherent Incompatibility

A substantial body of case law has developed regarding the compatibility or otherwise of FLSA opt-in class-action claims and state wage and hour Rule 23 opt-out claims asserted in the same lawsuit. Various district courts have addressed whether these two schemes are "inherently incompatible" when asserted in a "dual-filed" or "hybrid" case, and there has emerged no set rule on the doctrine. At least one Circuit Court of Appeals and several district courts have rejected the inherent incompatibility argument. *See, e.g. Ervin v. OS Rest. Serv., Inc.*, No. 09-3029, 2011 U.S. App. LEXIS 863 (7th Cir. 2011 Jan. 11, 2011); *Cortez v. Neb. Beef, Ltd.*, 266 F.R.D. 275 (D. Neb. Jan. 4, 2010) (Thalken, J.); *DiNardo v. Ned Stevens Gutter Cleaning & Installation, Inc.*, 2008 U.S. Dist. LEXIS 14946 (D.N.J. Feb. 28, 2008 (Chesler, J.); *Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726 (M.D. Pa. Sep. 20, 2007) (Rambo, J.); *Westerfield v. Washington Mutual Bank*, 2007 U.S. Dist. LEXIS 54830 (E.D.N.Y. July 26, 2007) (Amon, J.). The general argument utilized in support of rejection of the doctrine is that the FLSA is not intended to "limit the substantive remedies available to an employee under state law, nor to limit the procedural mechanism by which such a remedy may be pursued."

*Lehman*, 532 F. Supp. 2d at 732.

This Court, on the other hand, previously agreed with the various sister courts and other Circuits that have held that a Section 216(b) collective action and a Rule 23 class action are "inherently incompatible", and noted:

> It is clear that Congress labored to create an opt-in scheme when it created Section 216(b) specifically to alleviate the fear that absent individuals would not have their rights litigated without their input or knowledge. To allow [a] Section 216(b) action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement.

*Otto v. Pocono Health Sys.*, 457 F. Supp. 2d 522, 524 (M.D. Pa. October 27, 2006). *See also Herring v. Hewitt Assocs., Inc.*, 2006 U.S. Dist. LEXIS 56189 (D.N.J. August 11, 2006); *Moeck v. Gray Supply Corp.*, 2006 U.S. Dist. LEXIS 511 (D.N.J. January 5, 2006); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill 2004).

The issue *sub judice*, however, is not whether our application of the inherent incompatibility doctrine in a dual-filed action is still viable; but rather whether it is appropriate to extend the underlying reasoning we adopted in *Otto* to a separate action. In support of such an extension, Defendants highlight that, pursuant to Federal Rule of Civil Procedure 23, certification of a class in this action would require that each putative member be provided notice and an opportunity to "opt-

out" of the action, and any individual who fails to opt-out would be bound by a judgment, favorable or otherwise. (*See* Doc. 72 p. 20-21.) Defendants argue that the considerations that render a Rule 23 class incompatible with an FLSA opt-in class logically extend to separate actions because merely by filing a separate action plaintiffs could "'circumvent the [FLSA] opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA' and 'undermine Congress's intent to limit these types of claims to collective actions.'" (*Id.* at 22 (quoting *Otto*, 457 F. Supp. 2d at 523).)

Though Plaintiff disputes the validity of the inherent incompatibility doctrine in its entirety, he alternatively argues that, even if it is valid, it does not extend beyond a dual-filed lawsuit. Plaintiff argues that the substantial similarity between the Ohio MFWSA and FLSA and the identity between the two pending actions weigh against application of the inherent incompatibility doctrine because of the general principle that similar overtime claims are efficiently managed in a single proceeding. *See, e.g. De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309-10 (3d Cir. 2003) (recognizing this principle yet holding that the district court did not exercise sound discretion in granting supplemental jurisdiction because the state-law action substantially predominated over the FLSA action). Plaintiff highlights that at least one district court has "explicitly endorsed filing a separate

13

lawsuit after the plaintiff's original Rule 23 state law claims were dismissed on incompatibility grounds." (Doc. 74 p. 10 (citing *Sherhill v. Cellco Partnership*, 2008 U.S. Dist. LEXIS 91477 (E.D. Pa. Apr. 7, 2008).) Plaintiff maintains that "it would be an especially draconian outcome if individuals lose their right to pursue state law class action claims whenever they exercise their right to merely join (rather than initiate) a separate FLSA lawsuit." (Doc. 74 p. 10.)

Both parties offer compelling arguments with respect to their relative positions. On the one hand, application of the "inherent incompatibility" doctrine, if warranted, appears to be the most logical decision because failing to do so would produce an illogical result – denying a plaintiff the opportunity to litigate a claim in one action, but allowing the claim to proceed in an action that only differs from the original by docket number, does not vindicate the purposes behind application of the doctrine in the first place. Though disregard of the doctrine would be illogical, adherence to the inherent incompatibility doctrine could be fundamentally unfair if it served to deprive a plaintiff of the opportunity to litigate their otherwise actionable state-law claims.

As we noted above, in abolishing the representative action under the FLSA Congress was responding to excessive litigation by plaintiffs who did not necessarily have a stake in the litigation. Thus, the opt-in requirement of the FLSA

expresses Congress's intent to: "(1) control the volume of minimum wage and overtime litigation by eliminating representative (i.e., opt-out) actions; and (2) increase each individual's knowledge and involvement in the action by ensuring the no one's rights are litigated without their knowledge." (Doc. 72 p. 29; *see* p. 9, *supra*.) In other words, § 216(b) is specifically designed to avoid litigation through representative action. If we allow Plaintiff to proceed in a separate action that is in contravention of the important policies underlying the federal statute, we would still "eviscerate the purpose of Section 216(b)'s opt-in requirement", *Otto*, 457 F. Supp. at 524, just as much as in a dual-filed action. Forcing a plaintiff to perform *one* procedural step differently – by filing a separate action rather than asserting the same, related claim in another action – has no practical remedial effect and still undermines the purposes of the FLSA. In essence, it is a distinction without a difference. Thus, we find that extension of the inherent incompatibility doctrine to separately filed FLSA and state wage and hour claims is warranted. We further find that this extension requires dismissal of the pending action because Plaintiff has no basis for relief in this Court. Accordingly, we shall grant Defendant's Motion to Dismiss (Doc. 69) on those grounds.

D. **Rules Enabling Act**

Because we ultimately find that Plaintiff's state-law claims must be

dismissed from this Court because the action impermissibly conflicts with the FLSA, we need not address Defendants' arguments regarding the Rules Enabling Act.

## V. CONCLUSION

The Complaint is, indeed, well-pleaded and on its face. Nonetheless, the cause of action is not actionable in this Court because of its inherent incompatibility with the federal FLSA scheme. Therefore, the Complaint demonstrates no plausible entitlement to relief. Though we must dismiss the action from federal court, we do so without prejudice because we have not addressed the Complaint on its merits. Plaintiff's ability to re-file the action in state court, provided the statute of limitations or other procedural matters do not bar such initiation, sufficiently negates any likelihood of prejudice to Plaintiff or unfair practical result of our decision. Therefore, we will grant Defendants' Motion, dismiss the Complaint without prejudice, and close this case. An appropriate Order shall enter.